**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
UNITED STATES OF AMERICA,        )
                                                    )
          v.                                        )          Crim. Action No. 16-195-3 (ABJ)
                                                    )
RONALD HUNT,                              )
                                                    )
                         Defendant.          )
_____)

<u>**MEMORANDUM OPINION & ORDER**</u>

On November 1, 2016, defendant Ronald Hunt was indicted on one count of conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base, cocaine, and 100 grams or more of heroin in violation of 21 U.S.C. §§ 841 and 846 (Count I), and one count of unlawful possession with intent to distribute twenty-eight grams or more of cocaine base in violation of 21 U.S.C § 841 (Count V). Indictment [Dkt. # 1]. He was arrested on November 4, 2016. Arrest Warrant [Dkt. # 3]. On November 4, 2016, the government filed a motion for pretrial detention. Government Mem. in Supp. of Detention [Dkt. # 4] ("Gov't Detention Mem."). A hearing was held on November 7, 2016, Min. Entry (Nov. 7, 2016), and the Magistrate Judge issued a written opinion on November 8, 2016 ordering defendant Hunt to be held without bond. Detention Mem. [Dkt. # 7].

Pursuant to 18 U.S.C § 3145(b), defendant Hunt filed a motion on December 22, 2016 seeking a modification of the Magistrate Judge's decision to detain him pending trial. Mot. for Bond Modification [Dkt. # 10] ("Def.'s Mot."). The government opposed the motion, Government Mem. in Opp. to Def.'s Mot. [Dkt. # 11] ("Gov't Opp."), and after hearing from the parties at a status conference at which defendant also made a request for new counsel, the Court took the motion under advisement and invited both sides to submit additional information. Min. Entry (Jan.

6, 2017); Min. Order (Jan. 6, 2017).  On February 3, 2017, after defendant had obtained new counsel, he filed a second motion for bond modification.  Def.'s Second Mot. for Bond Modification [Dkt. # 15] ("Def.'s Second Mot.").  The government filed a notice of opposition to defendant's second motion, relying on arguments it made in its first opposition.  Government's Notice of Opp. to Def.'s Second Mot. [Dkt. # 17].

The Court has considered the relevant law, the facts presented in the indictment, the motions and opposition, the evidence presented at the hearings, the information provided by the Pretrial Services Agency, as well as the statements and arguments of counsel.  Based on the record before it at this time, the Court finds by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community if defendant is released.  Therefore, after consideration of all of the factors set forth in section 3142(g), the Court orders that defendant Hunt shall be detained pending trial.

## BACKGROUND

At the hearing and in pleadings filed before the Court, the government proceeded by proffer based on the indictment.  The defense offered no contrary evidence.  Accordingly, the Court makes the following findings of fact:

## I.     Interceptions

Over the course of the government's investigation, law enforcement received authority to intercept communications involving three phones used by defendants Marvin Carpenter and Ronald Hunt, and intercepted communications in which they made numerous references to drug trafficking.  For example, on May 3, 2015, Carpenter and Hunt arranged to sell approximately 125 grams of cocaine for more than $5,000.  Although Carpenter spoke directly to the buyer, he

directed the buyer to Hunt by providing the buyer with Hunt's phone number and location.  And Hunt later called Carpenter and indicated that the deal had been completed.

The interceptions also show that Hunt regularly distributed cocaine, heroin, and marijuana, sometimes doing it himself or using runners.  For example, on July 20, 2016, Hunt called one of his runners and asked, "Got a white boy outside the gate, right?"  An unidentified male said, "Yeah."  Hunt replied, "Give him three 20's for $50."  The next day, Hunt sent a text message concerning a transaction: "I can go 90 a g for you."  And on July 29, 2016, a customer asked Hunt to bring his scale with him to their meeting.

Other intercepted communications reveal Hunt's desire to obtain a handgun.  For instance, on July 20, 2016, Hunt received a message from an individual stating his intention to "bring you that Glock for free."  The next day, the same individual asked Hunt if he wanted the serial number removed from the weapon.  Defendant repeatedly indicated that he wanted the handgun, but he was prevented from obtaining it through FBI intervention.

## II.     Controlled Purchases

Beginning in June 2015, the FBI made a series of controlled purchases from an individual alleged to be Hunt's co-conspirator.  These purchases produced a total of 140 grams of heroin, bought in increments of approximately 28 grams.

## III.    Arrest

On July 8, 2016, Hunt was arrested by Washington, D.C. Metropolitan Police Department officers and charged with unlawful entry for violating a Superior Court order to stay away from Potomac Gardens.  In a search incident to arrest, officers recovered approximately thirty grams of a white-rock substance and four zip containers of suspected heroin, which both field tested positive for cocaine-base.  Lab tests have since determined that the white substance was actually heroin.

Officers also recovered the phone that had been intercepted on the wiretaps. The phone was returned to Hunt upon his release from Superior Court, and he continued to use it in communications similar to those described above.

## STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. §§ 3142(e)(1), (f)(2)(g). Even if defendant does not pose a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 754–55 (1987); *United States v. Simpkins*, 826 F.2d 94, 98 (D.C. Cir. 1987).

Congress also specified in the Bail Reform Act that a judicial finding that there is probable cause to believe that the defendant committed certain offenses – including an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* – gives rise to a rebuttable presumption that no pretrial condition or combination of conditions will be sufficient to protect the community. 18 U.S.C. § 3142(e)(3)(A).

Once a rebuttable presumption has been triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumptions in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if

4

released"), quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence."

And, as the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption functions as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id.* at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'"), quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *Portes*, 786 F.2d at 764 (use of the word rebutted "in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)"), quoting *Dominguez*, 783 F.2d at 707.

As the U.S. Court of Appeals for the Sixth Circuit has explained:

> The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial . . . .  To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it "outside the congressional paradigm."

*Stone*, 608 F.3d at 945–46 (internal citations omitted), quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985).

But in the end, while the presumption operates to shift the burden of production, it does not alter the government's statutory burden of persuasion, which is consistent with the presumption of innocence.  *Portes*, 786 F.2d at 764.  "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community."  *Stone*, 608 F.3d at 946.

To determine whether the government has carried its burden, the Court must consider:  (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Finally, although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge.  *See, e.g., United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990) (citing cases from the Second, Third, Fifth, Eighth, and Eleventh Circuits, which all hold that the district court should conduct a *de novo* review of the Magistrate Judge's detention decision); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Gonzales*, 149 F.3d 1192 at *1

(10th Cir. 1998); *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985); *Portes*, 786 F.2d at 761. The Court will follow that procedure in this case.

## ANALYSIS

### I.    The rebuttable presumption applies.

Under the terms of the Bail Reform Act, if there is probable cause to believe the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, a rebuttable presumption arises that no pretrial release condition or combination of conditions may be imposed to reasonably assure the appearance of the person or the safety of the community if he were released.  *See* 18 U.S.C. § 3142(e)(3).

Given defendant's indictment by a grand jury in this case, the Court finds that there is probable cause to believe that defendant committed an offense that triggers the presumption:  that is, that from sometime during the summer of 2015 to November 1, 2016, he conspired to distribute and possessed with intent to distribute cocaine base, cocaine, and heroin.  The evidence also supports a finding that there is probable cause to believe that he possessed heroin with the intent to distribute on July 8, 2016.[1]

The conspiracy charge in Count I and the possession with intent to distribute twenty-eight grams or more of cocaine base charged in Count V both carry a maximum penalty of forty years' imprisonment.  *See* 21 U.S.C. §§ 841(b)(1)(B)–(C), 846.  Although the drugs found on defendant's person at the time of his arrest turned out to be heroin and not cocaine, *see* Def.'s Mot. at 2, and therefore, he no longer faces a five-year mandatory minimum for his possession with intent to

---

1    The Court has not yet been officially informed whether the United States will seek a superseding indictment in light of the change in the substance involved in Count V.

distribute charge, *see* Gov't Opp. at 3, he still faces a maximum sentence of forty years' imprisonment for the conspiracy charge and will likely face a maximum of twenty years' imprisonment for a superseding possession with intent to distribute heroin charge.  *See* 21 U.S.C. § 841(b)(1)(C).  So this new evidence does not relieve him of the presumption.

If the presumption applies, defendant bears the burden to come forward with credible evidence that he does not pose a danger to the community.  *Alatishe*, 768 F.2d at 371.  Defendant is married and supports his family, *see* Def.'s Second Mot. at 6, and he has no prior convictions for crimes of violence.  *See* Pretrial Services Report.  And he has provided employment information, including a letter from his former employer at an auto body shop stating that he has worked in the past and would be able to resume his employment.  *See* Ex. 4 to Def.'s Second Mot. [Dkt. # 15-4].

Assuming that defendant has come forward with some credible evidence to counter the presumption, the Court must then consider all of the factors set forth in section 3142(g), and that analysis favors detention.

## II.    The four factors of section 3142(g) weigh in favor of detention.

### A.    The Nature and Circumstances of the Offense Charged

In determining whether there are conditions of release that will assure the defendant's appearance and the safety of the community, the Court must first consider "the nature and circumstances of the offense charged."   18 U.S.C. § 3142(g)(1).   And section 3142(g)(1) specifically directs the Court to consider "whether the offense . . . involves a . . . controlled substance."  *Id.*

While there has been one change in the facts since the Magistrate Judge issued his detention memorandum – that the white substance seized on July 8, 2016 was heroin and not cocaine – defendant has not presented any evidence that would otherwise alter the Magistrate

Judge's analysis.  Defendant is charged with serious offenses involving multiple sales of cocaine, crack, and heroin – all of which are highly addictive and can be deadly.  The amounts of these substances that defendant sold are not insignificant, and Hunt's involvement was not an isolated event.  Therefore, the nature and circumstances of the charged offense weigh in favor of detention.

### B.      The Weight of the Evidence Against the Defendant

The weight of the evidence against Hunt is very strong.  The evidence includes multiple intercepted conversations – which do not involve any sort of complicated code and are not particularly hard to understand – as well as the drugs found on his person at the time of his arrest on July 8, 2016.  Moreover, the quantity and packaging of the narcotics is consistent with an intent to sell them.

Courts in other circuits have cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of defendant's dangerousness.  *Stone*, 608 F.3d at 948; *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (holding that section 3142(g) "neither requires nor permits a pretrial determination of guilt").  Even under this standard, the evidence proffered by the government indicates that defendant participated in a conspiracy to sell extremely harmful and addictive drugs, which placed people in the community at risk.  When the Court also considers the evidence linking defendant to attempting to obtain a handgun, the evidence of defendant's dangerousness becomes even stronger.

So, this factor also weighs in favor of detention.

### C.      The History and Characteristics of the Defendant

The Court is also required to consider the history and characteristics of the defendant, including the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history

relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).  The Court must also consider "whether, at the time of the offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.* § 3142(g)(3)(B).

Here, the evidence of Hunt's family ties and employment is positive and not contradicted by the government.  But defendant's previous criminal history, particularly the narcotics and firearms offenses, concerns the Court.  In December 2001, defendant was sentenced to one year's probation for carrying an unregistered firearm – and there was an attempt to obtain a handgun in this case.  In June 2004, he received a suspended sentence for failure to appear on a misdemeanor charge.  In May 2006, Hunt was convicted of attempted possession with intent to distribute heroin. In November 2010, he was convicted of distribution of cocaine, and he was sentenced to three years' imprisonment, with thirty months suspended.  And most problematic, defendant recently failed to comply with the terms of his release in his Superior Court cases, in which he was ordered to stay away from Potomac Gardens.

On June 23, 2016, defendant was arrested for unlawful entry at Potomac Gardens based upon a barring notice that had been issued on May 28, 2016.  Defendant does not deny that on May 28, a police officer ordered him to stay away from the housing project for sixty days.  Def.'s Second Mot. at 2.  But he also states that he did not receive written notice of this restriction.  *Id.* He notes that on the evening of June 23, 2016, he was not within the confines of the fence surrounding the apartment complex, but he was directly across the street in a small park, handing out bottles of water because it was Ramadan.  *Id.* at 2–3.  Hunt asserts that he did not realize he was in violation of the barring notice in that location at that time.  *Id.* at 3.

Defendant's claim that he believed there was nothing wrong with positioning himself just outside the fence of the very complex from which he had been barred is somewhat hard to swallow. But even if the Court assumes that defendant did not realize he was in the wrong place when he returned to Potomac Gardens on June 23, the terms of the prohibition were made perfectly clear to him that day. After he was arrested on June 23, the court released him, but it imposed a stay away order that delineated the boundaries of the particular area he was to avoid. *See* Stay Away/No Contact Order, Ex. 2 to Def.'s Second Mot. [Dkt. # 15-2] ("Stay Away/No Contact Order") at 4. Defendant was not simply ordered to stay away from Potomac Gardens; the court specified at the arraignment that he was not to return to the area bounded by Pennsylvania Avenue, SE; 13th Street, SE; K Street, SE; and 11th Street, SE. *Id.* This order could not have been more clear. Indeed, according to defendant, he was even shown a map of the area from which he was barred. Def.'s Second Mot. at 3; *see also* Stay Away/No Contact Order at 5. Avoiding this area does not seem like it would be too onerous a requirement since defendant lives in Maryland, he works in Clinton, Maryland, *see* Def.'s Second Mot. at 7; Ex. 4 to Def.'s Second Mot., and he attends a mosque located in Northeast, and not Southeast, D.C. *See* Def.'s Second Mot. at 7.

Yet, on July 8, 2016, two weeks and one day after he was released under the court's supervision, defendant was arrested at 1200 I Street, SE, right in the middle of the prohibited area. *See* Pretrial Services Report. At this point, Ramadan was over and defendant was not found handing out water – he was found with approximately thirty grams of heroin and four zips containing heroin. In other words, defendant has clearly demonstrated an inability to comply with his conditions of release.

Moreover, after defendant was arrested on July 8, 2016 and released into the High Intensity Supervision Program ("HISP"), he continued to be actively involved in the sale of narcotics. As

discussed above, he participated in a series of phone calls and text messages related to drug trafficking on July 20, 21, and 29.  And officers intercepted phone calls on July 20 and 21, during which defendant attempted to obtain a handgun.  Neither selling drugs nor buying handguns on the street comports with the conditions of HISP.

Notwithstanding defendant's potential employment and family ties, he has been involved in the sale of narcotics for quite some time, and he has demonstrated an inability to comply with conditions of release.  So, the history and characteristics of the defendant weigh in favor of detention.

**D.    The Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by the Defendant's Release**

Although it is fair to say that defendant does not have a record of violence, and he is not charged with violent offenses, it is also fair to say that peddling heroin and crack, and trying to put himself in a position to do so while armed, puts the community at risk.  And the Court has every reason to believe that this conduct would not stop if defendant were to be released into HISP because he was already given that opportunity, and he was unable to comply with his conditions of release for even one month.  So, the Court finds that this factor also weighs in favor of detention.

Therefore, based upon a consideration of all of the evidence, the Court finds that there is no condition or combination of conditions that would reasonably assure the safety of the community if defendant Hunt were released.

## CONCLUSION

After considering the rebuttable presumption under section 3142(e)(3)(A), and all of the factors set forth in section 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of the community if defendant Hunt were released.  It is therefore hereby

**ORDERED** that defendant's Motion for Bond Modification [Dkt. # 10] and defendant's Second Motion for Bond Modification [Dkt. # 15] are **DENIED**, and defendant will be held without bond.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 28, 2017